[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was served on the defendant on December 12, 1995. The defendant is the owner of Units 2 and 6 in the Brooksvale Gardens Condominiums in Cheshire, Connecticut. The plaintiff is the unit owners' association organized and existing under the Connecticut General Statutes § 47-243. The complaint alleges that the defendant has failed to pay his assessments for common expenses pursuant to the statute. In addition, the plaintiff seeks late charges from the defendant and certain sums assessed in special assessments.
The complaint recited that as of the date of the complaint, November 27, 1995, the defendant owed the plaintiff a total of $4,661. The complaint sought damages, costs, the appointment of a receiver and reasonable attorney's fees. The defendant filed an answer on April 1, 1996, denying that he has failed to pay his assessments for common expenses, denying that he owed late CT Page 515 charges to the plaintiff and denying that he owed special assessments and denying the total amount due to the plaintiff. In addition, the defendant filed several special defenses. The first special defense alleges that the defendant is entitled to a setoff for work performed of value for the plaintiff and at the plaintiff's request and in the improvement of the real property at issue in lieu of the condominium fees. Defendant's second special defense is that plaintiff failed to mitigate its alleged damages by not taking reasonable steps to resolve the alleged debt with defendant before recourse to costly litigation financially harming both the plaintiff and the defendant — the defendant being the largest unit owner within the plaintiff condominium association.
The plaintiff filed a reply denying the special defenses. The parties were unable to resolve their differences and proceeded to trial on December 23, 1996. The evidence enables the court to find that the defendant fell behind on his condo fee starting about November of 1993. Between November of 1993 and August of 1995, he accumulated a debt for these charges in the amount of $3,799, which includes $120 in late fees, a special assessment in April of 1994 of $105. During this period of time, the defendant tendered checks in the amount of $1,077 against a total obligation claimed by the plaintiff of $4,876.
Sometime in 1994, the fire marshal in Cheshire became aware of certain fire stop problems in the basement of this eight-unit condominium and ordered that improvements be made to comply with the fire code. Initially, the president of the Association attempted to make these repairs. At sometime thereafter, the defendant, a contractor, agreed to make these repairs for the Association. Apparently, the president authorized the contractor to go ahead with the repairs without coming to any agreement with him as to what the cost of the labor was going to be, what the cost of the materials was going to be, and ultimately, what the overall cost of repairing the fire stops would be.
The contractor completed the work in June or July of 1995 to the satisfaction of the fire marshal but did not submit a bill to the president of the Association. As noted in plaintiff's Exhibit D, the president of the Association wrote to the defendant indicating the amount that was owed up to August of 1995 and received no reply from the defendant who was apparently seeking to offset these fees with the value of the work that he had performed in the basement. In September of 1995, the president of CT Page 516 the Association again wrote to the defendant informing him that the Association would be taking legal actions to recover the condo fees and the assessments; and again the defendant did not respond although at that time the fees had increased to $4,507 and no additional payments had been made by the defendant.
On September 25, 1995, the president again wrote to the defendant informing him that the Association will be taking legal action for recovery of condo fees. As noted earlier, the Association served the complaint on the defendant on December 12, 1995. Defendant retained counsel who filed an appearance on December 21, 1995. Counsel prepared his answer and special defenses and submitted them to court on April 1, 1996, but no bill was submitted for the work done by the defendant until August of 1996 when a bill for $3,957.01 was submitted. This bill has a remarkable similarity to the invoice submitted to the defendant by the Association on August 3, 1995 (Exhibit D). In July of 1996, the defendant started to escrow funds with his attorney. The exact amount of the money in escrow is $2,338.
The president of the Association concedes that some part of the bill, which was submitted in August of 1996, was in order, specifically, a charge for gutter repair of $155 and a charge for repair of the fences, $412.74, and a charge for the material used in painting the condo sign, $14.29, for a total of $582.03. The president of the Association did, however, dispute the cost of the work done in the basement which according to the plaintiff's bill, amounted to $3,374.81. Both parties offered experts to establish the value of the work done in the basement by the defendant. Defendant testified that he performed the work to the satisfaction of the fire marshal and that because he was an owner of two units in the eight-unit condominium, he attempted to keep the cost to a minimum.
Defendant brought forth an expert witness, a principal of Controlled Systems, Inc., of Norwalk, who submitted a written estimate for the work that was required in the condominium basement in the amount of $9,457.14. This witness testified in support of this proposal although all the work had been completed before he examined the premises. The plaintiff offered an expert who submitted a written proposal again based upon his examination of the work that had been done and completed before he examined the premises. His estimate for the ceiling, making fire stops in the basement amounted to $1,893.55; and for repairing and painting a fence around the dumpster, he estimated that the cost CT Page 517 would be $207.76. The court concludes that a great deal of the problems that have surfaced in this particular case result from a failure of communication; however, the primary cause of this lack of communication must rest on the defendant who failed to submit a bill or contact the president of the Association and discuss his claim for the value of his services. The court concludes that the plaintiff has proven the essential allegations of its complaint by a fair preponderance of the evidence and that the defendant has satisfied the court that he is entitled to some offset in accordance with the allegations of the first special defense that he has filed. The court finds that the defendant has failed to prove the allegations of his second special defense.
Considering all the evidence offered in this case, the court finds that the plaintiff has proved that there is due and owing the Association as of December 23, 1996, the sum of $5,857. The court further finds that the defendant is entitled to an offset against this sum in the amount of $3,216.31. This offset has been determined by the court to be the sum of $582.03, for work performed on the gutters, fence and painting of the condominium sign, and the sum of $2,634.28, for doing the fire prevention work in the basement.
Judgement may enter for the plaintiff in the amount of $2,640.69, plus a reasonable attorney's fee, which the court finds to be $1100.
Dorsey, J. Judge Trial Referee